## Commonwealth v. Frangie et al.

538

*Philip N. Shettig*, for petitioner.
*Harry E. Simmons*, for Commonwealth.

MCCANN, P. J., January 15, 1945.—This case arises upon a petition on behalf of Frank Frangie to the Court of Quarter Sessions of Cambria County for an order directing the Pennsylvania Liquor Control Board, its officers and employes, to return to petitioner certain liquor seized by the Pennsylvania Liquor Control Board from Frank Frangie. Upon the said petition the court granted a rule upon the Pennsylvania Liquor Control Board to show cause why said liquor should not be released. A hearing was held upon the rule and the record in the case considered.

The facts in the case are substantially as follows: On December 13, 1943, Frank Frangie and J. Earl Cook, manager of the Clinton Street State Liquor Store No. 1101, in Johnstown, Pa., entered a plea to a charge of bribery and were sentenced to jointly pay the costs of prosecution and each pay a fine of $200. Admittedly, the charge upon which the indictment was returned dis-

closed that approximately 140 cases of liquor were sold by defendant, J. Earl Cook, in his capacity as manager of the store above mentioned, to Frank Frangie for the regular price, but in addition to the purchase price of the liquor the said Frangie at various times paid bribes to the said manager for the purpose of obtaining liquor. The remainder of the liquor purchased from said store which had not been disposed of by Frangie was as follows: 28 pints Seagram 5 (whisky); 12 fifths Burtons Blend (whisky); 24 pints Bourbon Supreme (whisky); 24 fifths Haller's Special Reserve (whisky); 12 fifths Four Roses (whisky); 24 fifths Old Farm (whisky); 15 fifths Seagram 7 (whisky); 12 fifths Haig & Haig Scotch (whisky); 12 fifths Calvert Reserve (whisky).

This liquor was seized by the Liquor Control Board as contraband and, of course, would be confiscated to the Commonwealth under proper proceedings. The question is whether or not Frangie is entitled to recover the liquor in question because he purchased it in a State store, and paid the regular price therefor, even if he did obtain it by paying a bribe or gratuity to the store manager in order to secure a preference.

In order to approach this question of title properly it is necessary to consider the Liquor Control Act, creating the Pennsylvania Liquor Control Board as the licensing power for the regulation of the liquor traffic.

The Act of November 29, 1933, sp. sess., P. L. 15, as amended by the Act of June 16, 1937, P. L. 1762, 47 PS §744, known as the Pennsylvania Liquor Control Act, provides, inter alia, as follows:

Section 3(a): "This Act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth, and to prohibit forever the open saloon; and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose."

Section 3 (*c*) : "Except as otherwise expressly provided, the purpose of this act is to prohibit transactions in liquor . . . which take place in this Commonwealth, except by and under the control of the board, as herein specifically provided, and every section and provision of the act shall be construed accordingly."

Section 602 (2) : "It shall be unlawful for any person . . . to possess or transport any liquor . . . within this Commonwealth which was not lawfully acquired prior to January first, one thousand nine hundred and thirty-four, or has not been purchased from a Pennsylvania Liquor Store or in accordance with the board's regulations. The burden shall be upon the person possessing or transporting such liquor . . . to prove that it was so acquired."

Section 611 (*a*) : "No property rights shall exist in any liquor . . . illegally possessed . . . and the same shall be deemed contraband and shall be forfeited to the Commonwealth."

Prior to October 19, 1943, the Pennsylvania Liquor Control Board had issued a board rule prohibiting the sale of any quantity by the store employes in the various State stores, placing, in effect, a modified form of rationing. This was due to the scarcity of liquor available for the State stores, and the purpose of the rule was to provide an equitable distribution of the quantity available to wholesalers and individual purchasers.

There is no doubt that the liquor in question in the possession of Frank Frangie and seized by the Pennsylvania Liquor Control Board was acquired in violation of the board rule prohibiting quantity sales of whisky in State stores. There is also no doubt as to the power of the Pennsylvania Liquor Control Board to make any reasonable regulations governing the sale of liquor because the Pennsylvania Liquor Control Act specifically so provides. Section 202 of the act provides as follows:

"General Power to Make Regulations.—The board may, from time to time, make such regulations, not inconsistent with this act, as it may deem necessary for the efficient administration of this act. The board shall cause such regulations to be published and disseminated through the Commonwealth in such manner as it shall deem necessary and advisable."

Section 203 provides: "Specific Subjects on Which Board May Adopt Regulations.—Subject to the provisions of this act, and without limiting the general power conferred by the preceding section, the board may make regulations regarding—

"(a) The equipment and management of Pennsylvania Liquor Stores and warehouses in which liquor . . . are kept or sold, and the books and records to be kept therein;

"(b) The duties and conduct of the officers and employes of the board;"

In accordance with the powers granted it under the act, the Pennsylvania Liquor Control Board, under date of May 27, 1943, issued the following rule:

"SUBJECT: Changes in Store Operation Policy Effective June 1, 1943.

"TO: Superintendents, Supervisors, State Store Managers

"Due to the difficulty that now exists in obtaining spirituous and vinous liquors, the following instructions are to be observed and will remain in effect until further notice:

"*Regular Case Sales at Retail Discontinued*—Effective June 1, 1943 case sales of all merchandise *at retail* (listed items and special liquor order items) are discontinued. In other words, case lots will be sold only to holders of wholesale purchase permits, special permits or any permits authorizing the purchase at wholesale.

"*Case Sales at Retail Under Certain Emergencies*— There may be a few real emergencies where case lot sales *at retail* should be permitted. Approval of any

such emergency case lot sales must be secured only upon written application to the Director, Bureau of State Stores, Harrisburg, Pennsylvania, on the form provided (P.L.C.B. 708—Application for Retail Case Purchase) and each Store Manager will be held responsible for keeping on file for audit any such approved forms. All information called for on the form must be furnished and will include the code number or the special liquor order item, together with the quantity of merchandise desired and the specific reasons why it is required. The form is to be signed by the applicant and to bear the recommendation of the State Store Manager. . . ."

Under date of June 23, 1943, the Pennsylvania Liquor Control Board issued the following rule:

"SUBJECT: Front Labels of All Bottles of Liquor Store Merchandise *Sold at Retail* to be Stamped With Store Stamp.

"To: District Superintendents, District Supervisors, State Store Managers

"By direction of the Pennsylvania Liquor Control Board, effective immediately, the front label of *every bottle* of State Store Merchandise *sold at retail* must be stamped conspicuously with the Store Stamp you now have, pending receipt of a new stamp that will be furnished specifically for this purpose. In this way, each such bottle can be identified as State Store merchandise *sold at retail.*

"The labels should be stamped as far in advance as practicable, to permit ink to dry, so as to eliminate the possibility of any wet ink coming in contact with clothing.

"This is a very important feature of control in the establishment of equitable distribution to licensees and to the retail purchasing public. Accordingly the State Store personnel will be held accountable in seeing that *all bottles sold at retail* are so stamped."

Under date of August 5, 1943, the Pennsylvania Liquor Control Board issued the following rule:

"Subject: Sales Procedure.

"To: Bureau Directors, Division Chiefs, Section Supervisors, District Superintendents, District Supervisors, Store Managers, Warehouse Superintendents, Sub-Warehouse Managers

"Because many factors governing delivery of merchandise are today uncertain, it will be advisable to revise procedures for the sale of our stocks from time to time.

"With the receipt of this memorandum and until further notice, you are authorized to sell as follows:

"*At retail*: All purchasers may be sold at one time, one *unit*, of *any one* of the following types of merchandise: Whiskies, Dry Gin, Fruit Flavored Gin, Sloe Gin, Brandies, Cordials, Rock & Rye, Cocktails, Vermouths, or Dessert Wines. An extra unit of Rum and an extra unit of dry wine or sparkling wines. The maximum retail purchase may accordingly be three units, as outlined. . . ."

The rule issued August 5, 1943, was received by J. Earl Cook, store manager of State Store No. 1101 in Johnstown, on August 6, 1943, and signed by him on that date. The rules above mentioned, issued on May 27, 1943, and June 23, 1943, respectively, were also received by Cook as manager of the State store. None of the bottles of liquor which were found in the possession of the petitioner bears the stamp "Sold at Retail", although they were admittedly sold at retail by J. Earl Cook, State store manager, to petitioner in this case in violation of the rules aforesaid.

It has been further established that the purchase of the liquor in question was obtained by paying a bribe to the manager of the State Store No. 1101, said bribe being paid for the purpose of obtaining, contrary to the rules of the board properly promulgated, liquor, the sale of which was expressly prohibited by the board

544

under its regulatory power. There is no question as to the reasonableness of the rule under the circumstances. In order to provide an equitable distribution of the liquor available to the State stores it was necessary to restrict the sale under a modified form of rationing which, under the act, was clearly within the power of the board, and, in our opinion, liquor so purchased was possessed illegally by the purchaser and the State had the power to confiscate it under proper proceedings.

We are of the opinion that since the liquor in question was knowingly purchased in an illegal manner, through bribery, contrary to the promulgated rules of the Pennsylvania Liquor Control Board, which have the force of law under the power delegated by the legislature to the Liquor Control Board under the Pennsylvania Liquor Control Act, the purchaser had no legal rights therein and the liquor, therefore, became contraband and subject to confiscation by the Commonwealth through the Liquor Control Board.

We, therefore, enter the following

### Decree

And now, January 15, 1945, after argument and upon due consideration, the rule to show cause why the liquor referred to in the motion should not be returned to Frank Frangie is hereby discharged, at the cost of petitioner.